**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

| | |
|---|---|
| DAVID J. ELLRICH **0 9 CA 1 1 7 1 7 RWZ**<br>Plaintiff<br><br>v.<br><br>JUDGE STEPHEN E. NEEL, in his official<br>capacity AND ALL OTHER JUSTICES OF<br>THE TRIAL COURT OF THE<br>COMMONWEALTH OF<br>MASSACHUSETTS, in their official<br>capacities.<br>Defendants | CIVIL ACTION NO. _____<br><br><br>VERIFIED COMPLAINT |

MAGISTRATE JUDGE Sorokin

---

**COMPLAINT**

1.      David Ellrich ("Ellrich") asserts the following as its Complaint against Judge

Stephen E. Neel, Justice of the Superior Court of the Commonwealth of Massachusetts,

in his official capacity, and all other Justices of the Commonwealth of Massachusetts, in

their official capacity as Justices of the Trial Court of the Commonwealth of

Massachusetts.


**NATURE OF CLAIMS**

2.      This is an action for declaratory relief arising out of a summary judgment order

(the "Order") of the Massachusetts Superior Court (CIVIL ACTION NO. 06-3815BLS2),

Justice Stephen E. Neel presiding.  In that Order the Defendant affirmatively states that

Morgan Financial Advisors, Inc. ("MFA") and therefore, Ellrich, an officer of MFA and

its investment adviser representative, who were registered as "federal advisers" with the

Securities Exchange Commission under Section 203A(b) of the Investment Advisers Act

of 1940, as amended ("IAA") at the time that the events that gave rise to this case arose,

are subject to M.G.L. 110A, a Massachusetts state securities statute that regulates only

state licensed investment advisers and brokers and excludes *federal advisers and their*

*representatives* under M.G.L. 110A, 401(m ) from its provisions and requirements, the

state statute of limitations under M.G.L. 110A, state common law claims that conflict

with the Investment Advisers Act of 1940 ("IAA"), the Exchange Act of 1934 ("34

Act"), the Securities Act of 1933, and the Sarbanes-Oxley Act of 2002 ("SOX").

(Exhibit A, pgs. 7-8) In addition, the Defendant's Order states that MFA and Ellrich are

subject to concurrent jurisdiction and regulation by the Massachusetts Securities

Commission, disregarding the broad federal regulatory scheme designed by Congress

under Title III of the National Securities Markets Improvement Act of 1996

("NSMIA")(15 U.S.C. 78a Note, Pub L 104-290, 104th Cong. STAT. 3416) whereby

Congress granted the SEC exclusive regulatory authority over advisers registered under

203A(b) of the IAA ("federal advisers") and preempted all state law that regulates the

activities of federal advisers, and their representatives, including common law. The

Order issued by the Defendant therefore violates the Supremacy Clause of the Federal

Constitution and denies the Plaintiff substantial Due Process rights under the Federal

Constitution. This Court should declare that the Commonwealth of Massachusetts State

Trial Court and Justice Stephen E. Neel have no authority or jurisdiction to use a private

civil action to impose and/or enforce any state securities statute or common law upon

MFA, a federally registered investment adviser, and Ellrich, its officer and investment

adviser representative that has the effect or purpose of regulating their activities as federal advisers and declare that the Defendants' Order violates the Supremacy Clause of the U.S. Constitution. Furthermore, this Court should declare that, although all claims in the private action before the Defendant's Court are plead under state law, those claims are field preempted by federal securities laws and are thus removable to the U.S. District Court for the First Circuit and that the state law claims before the Defendant fall under the exception to the "well pleaded complaint rule" and must be treated as federal claims. As such, the Private Securities Litigation Reform Act of 1995 ("PLSRA") requires that whenever a claim of securities fraud is raised under federal law, the pleading standards set forth under PLSRA must be met. Additionally, this Court should determine that the U.S. District Court has original jurisdiction under 28 U.S.C. §1331 over this case because all claims before the Defendant are preempted and must be treated as federal claims.

## PARTIES

3.     Ellrich is an officer and investment adviser representative of MFA having his primary residence in the Commonwealth of Massachusetts.

4.     Defendant Stephen E. Neel is a Justice for the Superior Court of the Commonwealth of Massachusetts.

5.     Defendant - Other Justices of the Commonwealth of Massachusetts Trial Courts have their jurisdiction in the Commonwealth of Massachusetts.

## JURISDICTION

6.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

7.    Venue is proper pursuant to 28 U.S.C. §1337(a) because a substantial part of the

acts or omissions giving rise to the Complaint arise under an Act of Congress regulating

commerce.

## FACTS

**Preemption Principles**

8.    The Supremacy Clause of the Federal Constitution gives Congress authority to

preempt any state law that conflicts with the exercise of federal power. *Fidelity Fed. Sav.*

*& Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 152-153 (1982). Federal law may preempt

state law in one of three different ways: 1) express preemption, 2) field preemption, or 3)

conflict or implied preemption.

9.    First, Congress may expressly preempt state law by using language to that effect

in a statute. *Hillsborough County v. Automated Med. Labs, Inc.,* 471 U.S. 701, 713

(1985).  Second, the text of a statute or its legislative history may evidence a

Congressional intent to occupy a regulatory field to the exclusion of state law.

*International Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987).  Third, even if Congress

has not occupied a given regulatory field completely, state law is preempted to the extent

that it conflicts with federal law. *Geier v. American Honda Co. Inc.*, 120 S.Ct. 1913,

1919 (2000). Thus, under conflict or implied preemption principles, a state law is

preempted if the regulated party cannot comply with both the state and federal regulation.

*Hillsborough County*, 471 U.S. at 713. Additionally, if a state law is an obstacle to the

accomplishment and execution of the full purpose and objective of Congress by

interfering with the methods employed in the federal scheme, the state law is likewise

preempted. *Geier*, 120 S.Ct. at 1921; *also see Michigan Canners & Freezers Assoc., Inc.*

4

*v. Agricultural Mktg. & Bargaining Bd.*, 467 U.S. 461 (1984). Furthermore, implied preemption analysis is not foreclosed by an inference against preemption based on statutory language indicating a limited scope for preemption. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995).

10.    The imposition of damages under a state tort law claim is a form of state regulation subject to the Supremacy Clause. *Geier*, 120 S.Ct. at 1928; *also see San Diego Bldg. Trades Counsel v. Garmon*, 359 U.S. 236, 247 (1959). "It makes no difference whether the state law in question is a statute, ordinance, common law, or an award of state law tort damages if the imposition of the state standard would frustrate the objectives of the federal law." *id.; see also Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 256 (1984).

11.    The U.S. Supreme Court dramatically altered the landscape with respect to federal pre-emption in 1992 when it expressly held that the pre-emption doctrine applied, not only to state regulations, but also to state common-law claims. *Cipollone v. Liggett Group, Inc.,* 505 US 504 (1992). Pre-empting statutes and regulations but not common-law claims, according to the Court, could lead to anomalous results, i.e., a statute or regulation would be preempted whereas a common-law claim having the same result would not. *(also See Geier, 120 S.Ct)*

### The Comprehensive Federal Regulatory Scheme

12.    In 1996, Congress enacted the National Securities Market Improvement Act ("NSMIA"). (*See* 15 USC 78a note., *See Also* Pub. L. 104–290, § 1(a), Oct. 11, 1996, 110 Stat. 3416) Title III of that Act, entitled the Investment Advisers Supervision and Coordination Act, was enacted "to amend the IAA to, among other things, reallocate the

responsibilities for regulating investment advisers between the Commission and the securities regulatory authorities of the several states." (*See* SECs final rulemaking Release No. IA-1633 [File No. S7-31-96]) (Also *See* 15 U.S.C. § 80b-3a (b)(1)).

13.    Congress passed NSMIA to "eliminat[e] overlapping regulatory responsibilities. . . ." and noted that "[l]arger advisers, with national businesses, should be registered with the Commission and be subject to national rules." S. Rep. No. 104-293, 1996 WL 367191, at *4(1996).

14.    To effectuate its purpose, NSMIA sets forth a complex and complete Federal regulatory scheme under which the SEC is granted exclusive authority to regulate the activities of federally registered investment advisors and their investment advisory representatives.

15.    In addition to eliminating a federally registered investment adviser's obligation to register with a state securities administrator, under NSMIA it is exclusively federal law that establishes regulatory requirements regarding advisory activities and services, including recordkeeping, disclosure, and capital requirements. *See* Investment Advisers Act of 1940 Release No. IA-1633, 64 SEC Docket 1432 (May 15, 1997). The Final Rule Release ("IA-1633") stated the Commission's order that:

> "section 203A(b) preempts not only a state's specific registration, licensing, or qualification requirements, but all regulatory requirements imposed by state law on Commission registered advisers." (Exhibit J, p. 66)

> "Persons Who Act on Behalf of Investment Advisers – In addition to preempting state law with respect to investment advisers registered with the Commission, the Coordination Act preempts state law with respect to their "supervised persons. A supervised person is defined as any "partner, officer, director. . . . , or employee of an investment adviser, or other person who provides investment advice on behalf of the investment adviser and is subject to the supervision and control of the investment adviser." (Exhibit J, p. 40-41)

Although MFA is not a party to this case, Ellrich mentions MFA throughout this brief because Ellrich gains the benefit of preemption through the federal registration status of his superior, MFA. As such, the SEC addresses issues surrounding its preemption determinations with regard to advisers registered under 203A(b) of the IAA.

16.    Under NSMIA, Congress determined that (1) Commission-registered advisers would no longer be subject to "overlapping" state and federal regulation, but instead be subject to uniform "national rules", (2) all state laws that regulate the activities and services of advisers registered under 203A(b) of the IAA, and their advisory representatives are preempted, (3) the Securities and Exchange Commission ("SEC") shall have exclusive authority to regulate the activities of federally registered investment advisers, (4) the SEC shall have exclusive authority to promulgate federal rules and regulations under NSMIA, to develop a comprehensive national regulatory system that regulates federal advisers, and (5) the state(s) authority to regulate through new rulemaking and/or legislative or judicial efforts that have the effect of backdoor regulating federally registered advisers are preempted.

17.    Under NSMIAs Savings Clause (15 U.S.C. 80b-3a(b)(2)), the state(s) securities commissioners (and certain state officers performing like functions of the commissioner) retain only limited authority to investigate and bring enforcement actions (to "police" for fraud) against federally registered advisers. (Ex. K, IA-1633, H(2) p. 73)

18.    Congress realized that states might attempt to regulate commission registered advisers through use of NSMIA's savings clause and made clear in the Congressional record that this type of activity was absolutely preempted. NSMIAs' preemption clause, 15 U.S.C. 80b-3(a)(b)(1), and the SECs' interpretation of the statute in the SECs' Final

Rule IA-1633 implicate broad field preemption in all areas of state law that regulate the activities of federal advisers. As such, the analysis of state common law claims before the Defendant will show that each state law claim is regulatory in nature and conflicts with the IAA or other federal securities law and is therefore preempted by NSMIA. The single statutory claim under M.G.L 110A, §410(a) before the Defendant is preempted because it is part of the state's securities regulatory scheme that NSMIA expressly preempts with regard to federal advisers and their representatives. Additionally, M.G.L. 110A, 401(m), exempts federal covered advisers and their representatives from the provision of M.G.L. 110A.(Ex. O)

19.    One of NSMIAs' main objectives was to alleviate the duplication of state and federal regulatory efforts. Decreasing regulatory overlap between the SEC and the states was intended to allow the concentration of regulatory resources where they would be most effective. To this end, the Senate Banking Committee Report indicated that:

> "[t]he states should play an important and logical role in regulating small investment advisers whose activities are likely to be concentrated in their home state." On the other hand, "[l]arger advisers, with national business, should be registered with the [SEC] and be subject to national rules." (Exhibit J, p. 70, Note 153)

The SEC indicated its understanding of NSMIA as congressional recognition "that overlapping state and [SEC] regulation adds little investor protection, is a waste of limited regulatory resources, and imposes considerable burdens on larger advisers who tend to be subject to the laws of multiple jurisdictions" Id.

20.    In May of 1997 the SEC promulgated Section 203A(b) of the IAA based upon it's final interpretation of 15 U.S.C. 80b-3(a) (b) found in SEC Final Rule IA- 1633. Section 203A(b) of the IAA states, in relevant part: (also see Exhibit L-§80b-3a)

8

(b) Advisers Subject to Commission Authority –

(1) In general – No law of any State or political subdivision thereof requiring the registration, licensing, or qualification as an investment adviser or supervised person of an investment adviser shall apply to any person–

> (A) that is registered under section 203 as an investment adviser, or that is a supervised person of such person, except that a State may license, register, or otherwise qualify any investment adviser representative who has a place of business located within that State [sic]"

21.    The Final Rule Release IA-1633 stated the Commission's interpretation that:

"... section 203A(b) preempts not only a state's specific registration, licensing, or qualification requirements, but all regulatory requirements imposed by state law on Commission-registered advisers relating to their advisory activities or services, except those provisions that are specifically preserved by the Coordination Act."(Exhibit J, pgs 65-66) ........................

"This view of section 203A (b)(1) comports with the express intent of Congress to subject larger advisers to a uniform, national regulatory regime."(Exhibit J, pgs 68-69) .......................................................

"In the Commission's judgment the legislative history of the Coordination Act strongly supports broad preemption." (Exibit J, pgs 68-69

22.    Federal administrative agencies raise questions for preemption doctrine through

the agencys' power to *interpret* the statutes they administer, and through the agencys'

delegated authority to *act* in furtherance of the statutory scheme. The most prominent

issue here is whether Congress's own preemptive intent is ambiguous.

23.    "Several state commentators asserted that, under the Commission's interpretation

of the preemption provision, the Coordination Act would violate the Tenth Amendment's

command that powers not delegated to the federal government by the Constitution are

reserved to the states." (Exhibit J, p. 67, note 145)

24.    In response, the Commission stated: "This argument appears to confuse the scope

of preemption (about which some of the commentators and the Commission disagree)

with the constitutional authority of Congress (and the delegated authority of the Commission) to exclusively regulate investment advisers registered with the Commission." (Exhibit J, p. 67, note 145) "Section 203A(b) does nothing more than preempt certain state laws regulating Commission-registered advisers. The Supreme Court has made clear that the displacement of state law under a federal regulatory scheme does not violate the Tenth Amendment, provided that it is based on a valid exercise of Congress' constitutional powers such as those arising under the Commerce Clause. The Federal Government may displace state regulation even though this serves to 'curtail or prohibit the States' prerogatives to make legislative choices respecting subjects the States may consider important.'" *Federal Energy Regulatory Commission v. Mississipp*i, 456 U.S. 742, 759 (1982) (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 290 (1981). "No commenter suggested that Congress exceeded its Commerce Clause authority in passing the Coordination Act." See, e.g., section 201 of the Advisers Act [15 USC 80b-1] (express findings of the effects of investment advisory activities on interstate commerce). (Exhibit J, p. 67, note 145)

25. "Thus, even in cases where implied regulatory pre-emption is at issue, we generally "expect an administrative regulation to declare any intention to pre-empt state law with some specificity." *Guier,* 120 S.Ct. 1913 *citing California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 583, 94 L. Ed. 2d 577, 107 S. Ct. 1419 (1987); *see Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. at 717-718 (noting that too easily implying pre-emption "would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence," and stating that "because agencies normally address problems in a detailed manner and can speak through a variety

of means, including regulations, preambles, interpretive statements, and responses to

comments, we can expect that they will make their intentions clear if they intend for their

regulations to be exclusive"); *Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta*, 458 U.S.

at 154 (noting that pre-emption inquiry is initiated "when the administrator promulgates

regulations intended to preempt state law"). "This expectation, which is shared by the

Executive Branch, serves to ensure that States will be able to have a dialog with agencies

regarding pre-emption decisions ex ante through the normal notice-and-comment

procedures of the Administrative Procedure Act (APA), 5 U.S.C. § 553." Id.

26.     In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) the Supreme Court held

that the historic police powers of the states are not to be superseded by a federal statute

unless there is a clear and manifest purpose of Congress to do so.  The SEC states that

"such clear and manifest purpose is demonstrated by the language of the Coordination

Act (NSMIA) and the intent of Congress as expressed in the Coordination Act's

legislative history."( Exhibit J, p. 70, note 153) –

> Senate Report, supra note 4, at 4 ("The states should play an important and logical
> role in regulating small investment advisers whose activities are likely to be
> concentrated in their home state. *Larger advisers with national businesses, should
> be registered with the Commission and be subject to national rules*." (my
> emphasis )).

27.     In promulgating rule 203A(b), the SEC opened the public comment period for its

proposed rule changes to the IAA on Dec. 20 1996. *See* Rules Implementing

Amendments to the Investment Advisers Act of 1940, Investment Advisers Act Rel. No.

1601 (Dec. 20, 1996) [61 FR 68480 (Dec. 27, 1996)] ("Proposing Release"). SECs notice

and comment period concluded with the issuance of its Final Rule IA-1633.

28.    The SEC has determined that any ambiguity in 15 U.S.C. 80b-3a(b)(1) is resolved

by Congressional intent to no longer subject Commission registered advisers to

"overlapping" state and federal regulation but instead they should be subject to uniform

"national rules"( Exhibit J, p. 67) because "… many large advisers operating nationally

have been subject to the differing laws of many states. Industry participants strongly

asserted that compliance with differing state laws has imposed significant regulatory

burdens on these large advisers. (Exhibit J, p. 9, *See* Senate Hearing, supra note 4)

Congress intended to reduce these burdens by subjecting large advisers to a single

regulatory program administered by the Commission." (Exhibit J p. 10, *See* Senate

Report, supra note 4, at 2.)

29.    The second issue of agency interpretation arises when preemption is asserted on

the basis of regulations, orders, or other agency activity, rather than grounded in the

relevant statute itself.  In the case of the Coordination Act, the SEC determined that 15

U.S.C. 803(a)(b)(1) and therefore 203A(b)(1) did not require the SEC to look further than

the intent of Congress as reflected in the legislative history and a facial reading of the

statute to conclude state adviser law is broadly preempted, stating in part:

> "The structure and design of section 203A suggest Congress intended to broadly
> preempt state investment adviser law.  If Congress simply preempted all state law
> with respect to Commission-registered advisers, such a provision would have
> been over inclusive. (Exhibit J, pgs. 68-69)  If Congress preempted state
> investment adviser law by itemizing specific regulations to be preempted, such a
> provision would have been under inclusive and would have led to confusion
> whether a particular state regulation was included within the preemption category.
> Thus, the Commission believes that section 203A(b)(1) was drafted to describe
> what state investment adviser statutes typically require - - registration, licensing,
> and qualification—in order to preempt statutes containing these requirements with
> respect to Commission-registered advisers.  This view of section 203A(b)(1)
> comports with the express intent of Congress to subject larger advisers to a
> uniform, national regulatory regime.  If section  203A(b)(1) preempts only the
> specific registration, licensing, and qualification requirements of state investment

adviser statutes, Congress would not have had to preserve the authority of states to investigate and enforce fraud." (Exhibit J, pgs. 72-73)

30.    In *Chevron U.S.A. Inc. v. National Resources Defense Council,* 467 U.S. 837 (1984)), the Supreme Court determined that the Courts should defer to an agency's interpretations and preemption analysis.   "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." Morton v. Ruiz, 415 U.S. 199, 231 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation [467 U.S. 837, 844] of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Id. at 12 Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Id.at 13

31.    Consistent with the SEC's rule 203A(b), the Commonwealth of Massachusetts Securities Division amended its securities act ("Act") with section M.G.L. Chapter 110A, §401 to exempt federally registered investment advisors and their advisory representatives from the provisions of the Act.  Chapter 110A §401 states in part:

> (m) "Investment adviser" means any person who, for compensation, engages in the business of advising others . . . (except that) . . "Investment adviser" shall not include: . . . (Exhibit M)

> (2) a federal covered adviser.

> (n) "Investment adviser representative" means any partner, officer, director, or a person occupying a similar status or performing similar functions, or other

13

individual, except clerical or ministerial personnel, who is employed by or associated with:

(n)(B) "a federal covered adviser, subject to the limitations of section 203A of the Investment Advisors Act of 1940.

"Investment adviser representative" does not include such other persons employed by or associated with either an investment adviser or a federal covered adviser not within the intent of this subsection as the secretary may designate by rule or order.

(o) "Federal covered adviser" means a person who is registered with the Securities and Exchange Commission under section 203 of the Investment Advisers Act of 1940. "Federal covered adviser" shall not include any person who is excluded from the definition of "investment adviser" pursuant to clauses (A) to (G), inclusive, of paragraph (1) of subsection (m).

32.    Federal preemption can be expressly stated in a law or it can be implied, if Congress seems clearly to have intended to deal with a matter in a plenary manner. The Supremacy Clause of the U.S. Constitution mandates that federal laws "shall be the supreme Law of the Land." *Guier,* 120 S.Ct. 1913  If Congress or a delegated agency intends to pre-empt the field, or if state law conflicts, then the state statute and common law must yield. "We have recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively," *Guier,* 120 S.Ct. 1913 *citing (English v. General Elec. Co.*, 496 U.S. 72, 78-79, 110 L. Ed. 2d 65, 110 S. Ct. 2270 (1990), "or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is 'impossible for a private party to comply with both state and federal requirements,' *id.,* at 79, or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Guier,* 120 S.Ct. 1913 *citing Hines v.*

14

*Davidowitz*, 312 U.S. 52, 67, 85 L. Ed. 581, 61 S. Ct. 399 (1941)." *Freightliner Corp. v. Myrick* , 514 U.S. 280, 287, 131 L. Ed. 2d 385, 115 S. Ct. 1483 (1995).

33.     In *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), the Court "recognized that the statutory reference to 'any requirement' imposed by a State or its political subdivisions may include common-law duties. 518 U.S. at 502-503 (plurality opinion); 518 U.S. at 503-505 (BREYER, J., concurring in part and concurring in judgment); 518 U.S. at 509-512 (O'CONNOR, J., concurring in part and dissenting in part). The enabling clause of NSMIA, 15 U.S.C. 80b-3(a)(b)(1), contains a similar passage to that discussed by the *Medtronic* Court wherein it states: "No law of any State or political subdivision thereof requiring …..shall apply to any person … ." The potential for conflict between state(s) common law and preemptive provisions of federal acts is clearly an issue, of which, the U.S. Supreme Court is well aware. The Supreme Court, in a long series of opinions, has clearly stated that when common law conflicts arise, federal law shall be the supreme law of the land. The SEC's makes clear in its' interpretation of Section 203A(b) that all state law, common or statutory, that imposes a regulatory burden upon a federal adviser, is preempted. (IA-1633, H(1) p. 69) "When a state statute, administrative rule, or common-law cause of action conflicts with a federal statute, it is axiomatic that the state law is without effect." U.S. Const., Art. VI, cl. 2; *Cipollone v.Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992). "We have concluded that regulations "intended to pre-empt state law" that are promulgated by an agency acting non-arbitrarily and within its congressionally delegated authority may also have pre-emptive force." *Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta* , 458 U.S. 141, 153-154, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982).

**State Law Claims Before the Defendant**

*Breach of Contract Claim*

34.   The state civil action before the Defendant was raised by a limited partner/hedge fund investor ("Hays") and is solely premised upon her investment in the hedge fund. MFA was hired as the investment advisor to the hedge fund by the fund's general partner. (Exhibit D, p. 3) Neither MFA nor Ellrich are part of the funds general partnership. (Exhibit D, p. 3).

35.   Hays asserts that because she was a client of MFA before she invested in the fund, the "client relationship" with MFA, and therefore the advisory contract that governed that prior relationship extends to her investment in the hedge fund.  Such a presumption, however, would require MFA, and therefore Ellrich, to manage the hedge fund in accordance with Hays' individual objectives and financial circumstances, as a limited partner ("owner"), without regard to the financial objectives of the other ninety limited partners ("owners") or objectives stated in the funds' written prospectus. If Hays can impose such a duty upon MFA and Ellrich, then individual mutual fund investors can require a mutual fund manager to invest the funds assets based on that investors individual circumstance rather than the fund's objectives stated in the prospectus.  This argument fails for the reasons discussed below.

36.   Section 215 of the IAA specifically precludes Hays's assertions by voiding the MFA/Hays advisory contract with respect to Hays' hedge fund investment by action of statute: (Exhibit I)

**Section 215- Validity of Contracts**

(b) Every contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the

16

violation of, or the *continuance of any relationship* (my emphasis) or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void

37.    17 C.F.R 275.203(b)(3)-1 of the IAA defines the "client" of an investment adviser. It states in part: (Exhibit G)

(a) General. You may deem the following to be a single client for  purposes of section 203(b)(3) of the Act (15 U.S.C. 80b-3(b)(3)):

(2)(i) A corporation, general partnership, limited partnership, limited liability company, trust (other than a trust referred to in paragraph (a)(1)(iv) of this section), or other legal organization (any of which are referred to hereinafter as a "legal organization") *to which you provide investment advice based on its investment objectives rather than the individual investment objectives of its shareholders, partners, limited partners, members, or beneficiaries (any of which are referred to hereinafter as an "owner")* (italics mine)

Thus, under Section 203(b)(3)-1(a)(2)(i) of the IAA, the hedge fund's general partner is

MFA's "client", not Hays.  When Hays invested in the fund, her legal status under the

IAA became that of third party "owner" not a client.

38.    Hays maintained a separate account at Fidelity under the MFA advisory

agreement, separate and apart from her investment in the hedge fund. 17 C.F.R.

275.203(b)(3)-1(b)(1) states: (Exhibit G)

(b) *Special rules.* For purposes of this section:

*(1)* You must count an owner as a client if you provide investment advisory services to the owner separate and apart from the investment advisory services you provide to the legal organization, *provided, however, that the determination that an owner is a client will not affect the applicability of this section with regard to any other owner;* (emphasis mine)

Thus, under Section 203(b)(3)-1(b)(1) Hays may be a client of MFA for her investment at

Fidelity, separate and apart from her investment in the fund, of which she raises no

complaint, but she is still  considered an "owner", not a "client", for her investment in the

17

hedge fund because §203(b)(3)-1(b)(1) precludes Hays from changing the applicability of her legal status as "owner" under §203(b)(3)-1(a)(2)(i).

39.     Thus, under Section 215(b), the continuance of the Hays/MFA client relationship regarding her hedge fund investment violates 17 C.F.R 275.203(b)(3)-1 and renders the contract void, by action of statute. Furthermore, Hays paid no advisory fees to MFA for her investment in the hedge fund, because she is not a client of MFA, and therefore is not entitled to relief under the IAA. (Exhibit F, p. 3, panel page 65) *Transamerica Morgtgage Advisers v. Lewis*, 444 U.S. 11 (1979).

40.     Therefore, Hays breach of contract claim under state law is legally frivolous and preempted. By sustaining the continuance of a state common law breach of contract claim that conflicts with the IAA, the Defendant seeks to impose a state regulatory requirement upon a federal covered adviser that is preempted by NSMIA.

### *Breach of Fiduciary Duty*

41.     By law, investment advisers have fiduciary duties to "clients," not third party "owners." (See 15 U.S.C. § 80b-6) In 2006, the D.C. Circuit Court of Appeals reiterated that limited partner investors of a hedge fund are not clients of the funds' adviser and are owed no fiduciary duty by the funds adviser in *Goldstein v. SEC*, 451 F.3d 873, 876 (Fed. D.C. Cir. 2006), holding that:

> "Another section of the Advisers Act strongly suggests that Congress did not intend "shareholders, limited partners, members, or beneficiaries" of a hedge fund to be counted as "clients." Although the statute does not define "client," it does define "investment adviser" as "any person who, for compensation, engages in the business of advising others, either *directly* or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(11) (emphasis added). An investor in a private fund may benefit from the adviser's advice (or he may suffer from it) but he does not receive the advice *directly*. He invests a portion of his assets in the fund. The fund manager – the adviser – controls the disposition of the pool of

18

capital in the fund. The adviser does not tell the *investor* how to spend his money; the investor made that decision when he invested in the fund. Having bought into the fund, the investor fades into the background; his role is completely passive. If the person or entity controlling the fund is not an "investment adviser" to each individual investor, then *a fortiori* each investor cannot be a "client" of that person or entity. These are just two sides of the same coin."

......................

"At best it is counterintuitive to characterize the investors in a hedge fund as the "clients" of the advisor....the advisor owes fiduciary duties only to the fund, not to the fund's investors."

.........................

"If the investors are owed a fiduciary duty and the entity is also owed a fiduciary duty, then the advisor will inevitably face conflicts of interest. ......It simply cannot be the case that investment advisers are the servants of two masters in this way." *Goldstein,* 451 F.3d at 873, 887, 888 (C.A.D.C. 2006)

Since no duty is owed to Hays under the IAA, as a limited partner("owner") of the hedge fund, her breach of fiduciary duty claim is also legally frivolous. By sustaining the continuance of a state common law breach of fiduciary duty claim that conflicts with the IAA, the Defendant seeks to impose a state regulatory requirement upon a federal covered adviser that is preempted by NSMIA.

### *Fraud Claim*

42.    Under NSMIA's savings clause, discussed below, only the securities commissioner (or state officer performing like functions of the commissioner) may investigate and bring enforcement actions for fraud under a states anti-fraud statutes. Even so, state(s) are preempted under NSMIA from invoking violations of any state regulatory requirements as a basis for a fraud action upon a federal adviser. (Exhibit J, p. 69)

43.    Section 206 of the Advisers Act, 15 U.S.C. § 80b-6, makes it unlawful for any investment adviser – registered or not – "to engage in any transaction, practice, or course

of business which operates as a fraud or deceit upon any client or prospective client." §

80b-6(2). In *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963), the

Supreme Court held that this provision created a fiduciary duty of loyalty between an

adviser and his client. *See id. at* 191-92; *id.* at 201  Section 206 specifically relates to

"clients" and "prospective clients" of the adviser, not third party "owners." As noted

below, claims of securities fraud under Section 12(2) of the Securities Act of 1933 are

limited to "control persons."  In the case at hand, a control person is the issuer (general

partner) or officer of the general partner of the hedge fund.  The hedge fund's Prospectus

clearly states:

Section 10.1 – General Power and Authority  (Exhibit E)

> Except as otherwise provided in this Agreement, the General Partner will have
> exclusive management and control of the business of the Partnership, will make
> all decisions ……

Since neither MFA nor Ellrich are, or ever were, part of the hedge fund's general

partnership, they are not "control persons" of the hedge fund. (Exhibit C, p.3)

44.    NSMIA's preemption of state law for federal advisers does not limit plaintiff

recovery to claims under the IAA.  Federal advisers are subject to the "broad national

regulatory scheme" enacted by Congress, meaning all federal securities acts.  The IAA is

the last in a series of federal securities regulations enacted by Congress in response to the

stock market crash of 1929.  The IAA identifies those federal securities regulations to

which it is related in §202(a)(21). One of the "related acts" identified in §202(a)(21), the

Securities Exchange Act of 1934 (commonly known as the "Exchange Act" or the "1934

Act"), gives shareholders the right to bring a private actions *in federal court* to recover

damages the shareholder sustained as a result of securities fraud in section 10b-5. (15

20

U.S.C. 78 j(b) and 17 C.F.R. 240.10b-5) The Investment Advisers Act was not meant to limit the Securities Exchange Act or SEC Rule 10b-5. "Instead, [we believe that] these provisions complement each other and provide different means to curb slightly different types of "fraud or deceit." *Laird v. Integrated Resources, Inc.,* 897 F.2d 826(1990).  The hedge fund's Offering Memorandum and Prospectus were introduced as evidence before the Defendant's Court.  Under federal law, and upon the admission of the offering memorandum and prospectus, "plaintiffs are not entitled to a presumption of reliance on common law fraud and must allege facts showing actual and justifiable reliance on the alleged misrepresentations." *Kuyper v. Parks, et al,* 974 F.2d 1342 (9th Cir 1992) citing (*Smolen v. Deloitte, Haskins & Sells,* 921 F.2d 959, 964 (9th Cir. 1990) (citing *Corex V. Weymouth,* 235 Cal. App. 2d 140, 45 Cal.Rptr. 63,69 (1965).  Hays does not allege that she was told not to read or otherwise ignore any disclosures or disclaimers in the fund's Offering Memorandum or Prospectus. (Exhibit F, p. 2) Nor does Hays allege any conduct by Ellrich or MFA that prevented her own independent inquiry into the risks and potentially adverse ramifications of the investment in CMF. (Exhibit F, p.5) Any potential liability for making misleading or false statements under §12(2) of the 1933 Securities Act is limited to "controlling persons." *Moore v. Kayport Package Exp. Inc.,* 885 F.2d 531 (9th Cir. 1989).  To sustain a 10b-5 claim, plaintiff must allege that defendant was either (1) actually involved in the preparation and dissemination of material containing misrepresentations or misleading statements or (failed to disclose material facts where the defendant had a duty to disclose). *Jett v. Sunderman,* 840 F., 840 F. 2d 1487, 1492 (9th Cir. 1988). "Moreover, in cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual

reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the corporate officers." *Wool v. Tadem*, 818 F.2d 1429, 1439 (9th Cir. 1988) citing *Bruns*, 583 F.Supp. at 1052; *Zatkin*, 551 F.Supp. at 42.

45.    Hays' only specific fraud claim in her pleadings is her claim that from April 2003 until September 2003, Ellrich and MFA concealed CMF's insolvency from her.  (Exhibit C, p. 6 #30) 15 U.S.C. 80b-10 requires investment advisers to maintain strict confidentiality of clients' affairs.  Section 80b-10 (also stated in Section 210(c) of the IAA) states: (Exhibit H)

> (c) Disclosure by investment adviser of identity of clients
>
> No provision of this subchapter shall be construed to require, or to authorize the Commission to require any investment adviser engaged in rendering investment supervisory services to disclose the identity, investments, or affairs of any client of such investment adviser, except insofar as such disclosure may be necessary or appropriate in a particular proceeding or investigation having as its object the enforcement of a provision or provisions of this subchapter.

MFA has a legal obligation to maintain strict confidentiality of its client(s) affairs.  The general partner of the fund is MFAs client, not Hays.  As such, neither MFA nor Ellrich have a legal obligation to disclose any general partner affairs to Hays and in fact to have done so would violate § 80b-10.

46.    By allowing the continuance of a state common law fraud claim that conflicts with the IAA, the Defendant seeks to impose a regulatory requirement, that being a client or agency relationship where none can legally exist. (Exhibit H-§80b-10)  Such an imposition would conflict with section §80b-10 (see also Section 210(c)) of the IAA, Section 206 of the IAA, section 12(2) of the 1933 Securities Act, and Section 10b-5 of the Exchange Act of 1934, and is therefore preempted by NSMIA.

22

47.    Furthermore, Hays' fraud claim is preempted by NSMIAs savings clause. 15 U.S.C. 80b-3a(b)(2) grants only the commissioner(or state officer performing like functions) authority to raise enforcement actions under a state(s) anti-fraud laws.  In *Guice v. Charles Schwab & Co., Inc.*, 89 N.Y 2d 31, 674 N.E. 2d 282, 651 N.Y.S. 2d 352 (1996) the Court states "[i]t would be extraordinary for Congress, after devising an elaborate [balanced regulatory] system that sets clear standards, to tolerate common-law suits that have the potential to undermine this regulatory structure" *see also*, *Gordon v. New York Stock Exchange*, 422 US 659, 688-690 and *Darling v Mobil Oil Corp.*, 864 F2d 981, 987-988).

### Violations of M.G.L. 110A § 410(a)

48.    On its face, M.G.L. 110A §410(a) is a state securities regulation that is expressly preempted by NSMIA as applied to SEC registered advisors. The IAA provides a "safe harbor" that relieves federal advisors from the definition of "acting as broker" as the term is used in M.G.L. 110A, §410(a). On July 17, 1998, the SEC issued Investment Advisers Act of 1940 Release No. IA-1732, 63, Fed. Reg. 39505 (July 17, 1998)("IA-1732"), which states: (Exhibit K)

> "The wording and legislative history of Section 206(3) indicate that Congress recognized that both principal and agency transactions create the potential for advisers to engage in self-dealing.".… "When an adviser engages in an agency transaction on behalf of a client, it is primarily the incentive to earn additional compensation that creates the adviser's conflict of interest.".….

> ………………………..

> "Thus, we are taking this opportunity to clarify that; (1) an adviser may obtain client consent for purposes of Section 206(3) to a principal or agency transaction after execution, but prior to settlement, of the transaction; and (2) an adviser is **not** "acting as broker" within the meaning of the Section if the adviser receives no compensation (other that its advisory fee) for effecting a particular agency transaction between advisory clients." Id. p. 6

49.    In her pleadings, Hays claims that MFA and Ellrich sold her the hedge fund but agrees with Ellrich in her deposition that Ellrich and MFA made no commission or advisory fees from her investment in CMF. (Exhibit F, p.3) As such, Ellrich and MFA acted squarely within the safe harbor of IA-1732. (Exhibit K, p. 6)

50.    M.G.L 110A§410(a)(2) limits liability to those who sell securities, including, issuers and their officers, directors, employees, brokers and agents.  MFA and Ellrich are federal registered advisors, not brokers. In addition, neither MFA nor Ellrich were part of the general partnership nor were they directors, officers or employees of the partnership. (Exhibit D, p. 3, Exhibit E, p. 2, Section 10.1(j))  Under M.G.L. 110A §401(b), the term "Agent" shall not include an individual who represents: (Exhibit M)

    (1) an issuer in:

    (C) effecting transactions in a federal covered security as described in section 18(b)(3) and 18(b)(4)(D) of the Securities Act of 1933;

The Defendant received evidence that the CMF hedge fund was a federal covered security pursuant to 18(b)(4)(D) of the Securities Act of 1933, and therefore neither Ellrich nor MFA were agents of the issuer.(Exhibit D, p. 1)  Furthermore, the Supreme Court has limited liability under federal securities laws to those who solicit a purchase, not those who "merely assist another's solicitation efforts." *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)).

51.    Additionally, liability under M.G.L 110A § 410(a) can only be imposed if the "issuers and their officers, directors, employees, brokers and agents" have a financial interest in the transaction. In *Cohen v. State Street Bank and Trust Company*, No. 07-P-115 (September 2008), the Massachusetts Appellate Court decided that the motion judge

24

"properly refused to apply the Act to State Street, as it applies only to "[a] person who successfully solicits the purchase motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Id. citing (Citing Stolzoff v. Waste Sys. Intl., Inc.*, 83B F. Supp. 676,686 (D.Mass. 1993)*, aff'd in part sub nom. Adams v. Zimmerman*, 76 F. 3d 1164 (1 Cir. 1996) …….Cohen failed to allege, much less provide any evidence, that State Street had any financial interest underlying the specific investment selections of which he complains. [FN12], [FN13*] Contrast Id. citing Adams v. Hyannis Harborview, Inc.*, supra at 687(sales agent was a "seller" where she received commission on each unit sold)."

52.    Furthermore, when federal law preempts a field, it leaves "no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). When an entire field is preempted, a state may not add a damages remedy unavailable under the federal law. *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. IDACORP, Inc.*, 379 F.3d 641, 648-49 (9th Cir. 2004) (noting that it would be inconsistent with congressional intent to permit a state court to do, through a legal principle of general applicability, that which the federal entity in the preempted field itself may not do). An integral part of any regulatory scheme is the remedy available against those who violate the regulations. See, e.g., *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959) ("The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme."). (See

25

*Silvas v. e-Trade Mortgage Corporation*, 2008 WL 239422 (9th Cir. 2008) , 1501-1502, Note #3

53.     Thus Hays' claim under M.G.L. 110A §410(a) is preempted by NSMIA. By allowing claims under a Massachusetts securities statute, the Defendant seeks to impose a state regulatory requirement upon a federal covered adviser which is expressly preempted by NSMIA.

54.     The Defendant's imposition of common law and state statutory regulatory requirements upon Ellrich and MFA clearly undermines the SECs' <u>exclusive</u> authority to regulate federal advisers and undermines the intent of Congress to relieve federal advisers of state regulatory burdens. "When, thus, a State's regulation, through the imposition of common-law tort liability or otherwise, adversely affects the ability of a federal administrative agency to regulate comprehensively and with uniformity in accordance with the objectives of Congress, then the state law may be pre-empted even though 'collision between the state and federal regulation may not be an inevitable consequence'" *Guice v. Charles Schwab & Co., Inc.*, 89 N.Y 2d 31, 674 N.E. 2d 282, 651 S.Y>S 2d 352 (1996) citing (*Schneidewind v ANR Pipeline Co.*, 485 US 293, 310, quoting *Northern Natural Gas Co. v State Corp. Commn. of Kansas*, 372 US 84, 91-92).

### *NSMIAs savings clause*

55.     Section 203A(b)(2) of the IAA makes clear Congressional intent to limit state(s) jurisdiction, over federal advisers, to that of "policing" for fraud. *(Also See 15 U.S.C. 80b-3(a) (b)(2))* It states, in relevant part: (Exhibit L)

> (2) **Limitation** – Nothing in this subsection shall prohibit the securities
> commission (or any agency or officer performing like functions) of any State
> from investigating and bringing enforcement actions with respect to fraud or

26

deceit against an investment adviser or person associated with an investment adviser.

If Congress intended to save common law claims under NSMIA it would have done so expressly. Even if this Court determines that common law claims are not barred by the preemptive provisions of NSMIA, normal conflict pre-emption principles still apply. "However, the savings clause does not bar the ordinary working of conflict pre-emption principles. Nothing in that clause suggests an intent to save state tort actions that conflict with federal regulations." *Geier,* 120 S.Ct. 1913, 1919 (2000).

56.    In enacting NSMIA, Congress carefully crafted the savings clause to limit a state's anti-fraud policing authority with regard to SEC registered advisors to "the securities commission (or any agency or office performing like functions)". Neither Hays nor the Defendant are a "state officer performing like functions of the securities commissioner" empowered with "policing authority".

57.    Congress was cognizant that the several states may attempt to regulate federal advisers through the use of NSMIAs' savings clause and was careful to state in the record its' intent that the state(s) be specifically preempted from this type of regulatory activity:

. ...."the Committee intends to prevent the States from indirectly doing what they have been prohibited from doing directly." ...the legislation preempts authority that would allow the States to employ the regulatory authority they retain to reconstruct in a different form the regulatory regime ....that Section 18 has preempted." *House Report, supra not 96, at 34.*

The Senate Report discusses a similar section in the Senate bill, stating that:

"[t]he Committee clearly does not intend for the "policing" authority to provide states with a means to undo the state registration preemptions" *Senate Report, supra note 4, at 15.* (Exhibit J, p. 71, Note 155)

58.    It is clear from the Congressional record that Congress intended to specifically preempt the enforcement of state laws upon federal advisers in order to justify a claim of

27

fraud or deceit. Put another way, State(s) are preempted from bringing enforcement
actions against a federal advisor premised upon violations of state law. "In the Proposing
Release, the Commission interpreted section 203A(b)(2) as precluding a state from
indirectly regulating the activities of Commission-registered advisers by applying state
requirements that define "dishonest" or "unethical" business practices unless the
prohibited practices would be fraudulent or deceptive absent the requirements." (Exhibit
J, p. , IA-1633 H, pgs.69-70)

59.     In a recent fraud case brought by the California Attorney General, under Title I of
NSMIA relating to the Investment Company Act of 1940(codified in part at 15 U.S.C. §
77(r)), the California Appellate Court in *Capital Research and Management Company et
al., v. Brown*. Cal. Rptr. 3d_, 2007 WL 195785 (Cal. App. 2. Dist. Jan. 26, 2007) set forth
the jurisdictional reach under it its savings clause, which is similar to 203A(b)(2).
NSMIAs' savings clause under the Investment Company Act of 1940 (15 U.S.C. § 77r
(c)(1)) states:

> "Consistent with this section, the securities commission (or any agency or officer
> performing like functions)…."

The *Brown* Court states, "…the Attorney General's action has all of the attributes
necessary to bring it squarely within the ambit of the savings clause. It is (1) an
enforcement action (2) brought by a state officer performing like functions of a securities
commission, …" *id.*

60.     The action before the motion court is <u>not</u> an enforcement action, and neither a
private litigant, nor the motion Court is a "policing authority" as described by Congress,
empowered to investigate and bring enforcement actions within the meaning of the
express language of NSMIA and 203A (b). (*See* 15 U.S.C. § 80b-3a(b)(2))

61.    For reasons set forth above, the Defendant lacks jurisdiction to hear Hays' state law fraud claims against Ellrich and MFA under NSMIAs savings clause the because (1) Hays' claims are not premised upon violations of federal law, (2) the case before the Defendant is not an enforcement action brought by the commissioner (3) the case before the Defendant is <u>not</u> brought by a state officer performing like functions of the securities commissioner, (4) the Defendant is not a state officer within the meaning of the saving clause, and (5) Congress did <u>not</u> intend to save common law claims within the narrow reading of NSMIA's saving clause.

## Exception to The Well Pleaded Complaint Rule

62.    "The Supreme Court has made clear that, to determine whether a claim arises under federal law, a court, under the "well pleaded complaint" rule, generally looks only to the plaintiffs complaint." Palkow v. CSX Transportation, Inc., 431 F.3d 543, (2005) citing Chilly v. First National Bank, <u>299 U.S. 109</u>, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Louisville & N.R. Co. v. Mottley, <u>211 U.S. 149</u>, 29 S.Ct. 42, 53 L.Ed. 126 (1908). If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable. "However, as *Franchise Tax Board of CA v. CLTV*, 463 U.S. 1 (1983) acknowledged, the Supreme Court has developed a limited exception to the well pleaded complaint rule: the "complete preemption" doctrine. If Congress intends that a federal statute should "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law." See Metropolitan Life Ins. Co. v. Taylor, <u>481 U.S. 58</u>, 63-64, 107 S.Ct. 1542, 1546-1547, 95 L.Ed.2d 55 (1987). The complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding

that, on its face, the plaintiffs complaint alleges only a state law cause of action. Since

Congress intended that all such claims before the Defendant should be preempted, the

claims before the Defendant must be treated as alleging a federal cause of action. It has

consistently been held that removal jurisdiction exists once the plaintiff's claim is

deemed federal. See, e.g., Federated Department Stores, Inc. v. Moitie, 452 U.S.

394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The U.S. District Court has original

jurisdiction under 28 U.S.C. §1331 to hear actions arising under federal law. This Court

should determine the case before the Defendant is field preempted and the U.S. District

maintains original jurisdiction under 28 U.S.C. §1331 to hear cases involving only

federal claims.

**Statute of Limitations under Sarbanes-Oxley 2002**

63.    The Defendant's application of any state statute of limitations is an imposition of

a state regulatory requirement upon a federal adviser that is expressly preempted by

NSMIA.    Since the state law claims before the Defendant are field preempted, the

federal statutes of limitations for securities causes of action arising under federal law

must be applied under the Supremacy Clause of the Federal Constitution. In *Silvas v.*

*E\*Trade Mortgage Corporation*, 2008 WL 239422 (9th Cir. 2008) the Court determined

that plaintiffs raised state law violations because the statutory period for raising claims

under the federal Truth in Lending Act ("TILA") had expired. By applying the doctrine

of field preemption, the Court refused to allow plaintiffs to use state law as a Trojan

Horse to breach the wall erected by TILA's statute of limitations, declaring instead that

"an attempt by [plaintiffs] to go outside the congressionally enacted limitation period of

TILA is an attempt to enforce state regulation in an area expressly preempted by federal

law." Id. 1501-1502, Note 3  The Court refused to allow creative plaintiffs to bootstrap an

out-of time TILA claim into a state courtroom by using a state-law claim predicated upon

a TILA violation.

64.    The Sarbanes-Oxley Act of 2002 ("SOX") amends the Securities Exchange Act of

1934 to require that all securities fraud claims under federal law be brought within five

(5) years of the actual event or two (2) years from the time a plaintiff learns of a fraud,

whichever is earlier. (15 U.S.C. 98 *et seq.*) Sarbanes-Oxley states in pertinent part:

> (b) Notwithstanding subsection (a), a private right of action that involves a claim
> of fraud, deceit, manipulation, or contrivance in contravention of a regulatory
> requirement concerning the securities laws, as defined in section 3(a)(47) of the
> Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought no later
> than the earlier of --
>
> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation.
>
> 15 U.S.C. 78c(a)(47) states:
>
> 47) The term "securities laws" means the Securities Act of 1933 (15 U.S.C. 77a et
> seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), the Sarbanes-
> Oxley Act of 2002 [15 U.S.C. 7201 et seq.], the Public Utility Holding Company
> Act of 1935 (15 U.S.C. 79a et seq.) [15 U.S.C. 79 et seq.], the Trust Indenture Act
> of 1939 (15 U.S.C. 77aaa et seq.), the Investment Company Act of 1940 (15
> U.S.C. 80a-1 et seq.), the Investment Advisers Act of 1940 (15 U.S.C. 80b et
> seq.) [15 U.S.C. 80b-1 et seq.], and the Securities Investor Protection Act of 1970
> (15 U.S.C. 78a et seq.).

65.    The Supreme Court has interpreted the statute of limitations in the Securities

Act(s) as precluding any application of tolling. *Lampf v. Gilbertson* (90-333), 501 U.S.

350 (1991)

66.    The state action claims before the Defendant fall squarely within the scope of the

IAA and other federal securities laws.  Securities lawsuits claiming violations of the IAA

also carry the same federal statute of limitations prescribed in Sarbanes-Oxley. *Kahn v.*
*Kohlberg, Kravis, Roberts & Co, LLC*, 970 F.2d 1030, 61 USLW 2060, Fed. Sec. L. Rep
P 96,889 (1992).

67.     In August of 2003 the Massachusetts Securities Division exercised its rightful
jurisdiction under NSMIA's savings clause to investigate MFA, Ellrich and the fund's
general partner regarding the events leading to the insolvency of the hedge fund but
refused to bring any charges against the parties. Hays, as a limited partner "owner", was
notified in writing of the investigation by the Massachusetts Securities Commission on
September 11, 2003 and indicated this in her pleading and hand written notes gained by
Plaintiff in discovery.(Exhibit N, p. 1) Therefore, the statute of limitations under SOX
began to run on September 11, 2003. On September 9, 2005, the statute expired. Hays
later filed her claim in the Massachusetts State Superior Court, BLS2 on September 11,
2006 claiming violations of state law. Since all the claims before the Defendant are field
preempted by NSMIA, the case before the Defendant is absolutely barred by the federal
statute of limitations under SOX.

### *Private Securities Litigation Reform Act of 1995*

68.     The state law claims before the Defendant must be treated as federal claims under
the exception rule stated in *Franchise Tax Board of CA v. CLTV*, 463 U.S. 1 (1983) See
also *Palkow v. CSX Transportation.*, 431 F.3d. 543 (6th Cir. 2005) Additionally, Federal
pleading standards must be applied to state court proceedings where plaintiff's claims are
raised under federal law. *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359
(1952). This Court should determine that securities fraud claims before the Defendant are
preempted by federal law and must meet the pleading standards required by the Private

Securities Litigation Reform Act of 1995 ("PSLRA"). In *Newby v. Enron Corporation*,

338 F.3d 467, (2003), the Court determined that the PLSRA is not limited to class action

lawsuits, but covers all securities fraud actions raised under federal law. "This (class

actions only) reading of §78u-4 is contrary to the plain language of the statute. In this

circuit, the plain language of the statute governs when clear on its face. Id. *citing*

*Andrews & Kurth L.L.P. v. Family Snacks* (In re *Pro-Snax Distribs.*), 157 F.3d 414, 425

(5th Cir.1998). Subsection (a) of § 78u-4 governs "Private class actions." Subsection (b),

which is equal in rank to subsection (a), is separate and distinct from subsection (a) and

sets "Requirements for securities fraud actions." Subsection (b) governs a broader

category than subsection (a) and repeatedly makes its terms applicable to "any private

action arising under this chapter." Id. @ 20

The Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)

that there are six elements that a plaintiff must allege and prove in a securities fraud

action:

> 1. The defendant made a "material misrepresentation or omission";
>
> 2. The defendant acted with "scienter", or a "wrongful state of mind" (typically understood to mean that the defendant intended to make the material misrepresentation or omission, or acted with recklessness in making the misrepresentation or omission);
>
> 3. The material misrepresentation or omission was made "in connection with the purchase or sale of a security";
>
> 4. The plaintiff who was allegedly victimized by the fraud relied upon the material misrepresentation or omission;
>
> 5. The plaintiff suffered an economic loss as a result of the alleged fraud; and
>
> 6. The plaintiff can allege and prove "loss causation", which means that the allegedly fraudulent misrepresentation or omission caused the plaintiff's economic loss.

69.    In order to comply with PLSRA pleading standards (i.e., the specificity and strength of the factual allegations that must be contained in the plaintiff's complaint) in three specific ways, first, the plaintiff has to identify:

> "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

70.    Hays's fraud pleading has not made any attempt to meet the standard of specificity required under PLSRA, instead preferring to make a statement of claim without stating any actual acts or omissions giving rise to the claim. (Exhibit C)

71.    Second, PSLRA requires a plaintiff to allege the defendant acted with the required state of mind, i.e., that s/he knew the challenged statement was false at the time it was made, or was reckless in not recognizing that the statement was false.  In alleging scienter under the PSLRA, the plaintiff must,

> "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

72.    On June 21, 2007, the US Supreme Court added that plaintiffs alleging securities fraud violations would have to show a "cogent inference" of intent to deceive or defraud, thereby raising the national pleadings requirements for all plaintiffs in federal securities fraud litigation matters. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* 437 F.3d 588 (7th Cir. 2006), cert. granted, 75 U.S.L.W. 32 WL 3207 (U.S. Jan. 5, 2007) (No. 06-484). "To establish 'scienter', the plaintiff must show that the defendant acted: with 'actual intent to deceive, manipulate, or defraud' or severe recklessness, which is 'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even

inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.' " *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 889 (5th Cir. 1987)(*quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 47 L. Ed. 2d 668, 96 S. Ct. 1375 (1976) and *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir.) (en banc), cert. denied, 454 U.S. 965, 70 L. Ed. 2d 380, 102 S. Ct. 506 (1981)).

73.     PSLRA makes clear that a plaintiff in a federal securities fraud claim "shall have the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).

74.     As the *Dura Pharmaceuticals* court noted:

> "The securities statutes seek to maintain public confidence in the marketplace. *See United States v. O'Hagan*, 521 U.S. 642, 658 (1997). They do so by deterring fraud, in part, through the availability of private securities fraud actions. *Randall v. Loftsgaarden*, 478 U.S. 647, 664 (1986). But the statutes make these latter actions available not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause. Cf. Basic, 485 U.S. at 252 (White, J., joined by O'CONNOR, J., concurring in part and dissenting in part) ("[A]llowing recovery in the face of affirmative evidence of nonreliance would effectively convert Rule 10b-5 into a scheme of investor's insurance. There is no support in the Securities Exchange Act, the Rule or our cases for such a result" (internal quotation marks and citations omitted))." *Dura Pharmaceuticals, Inc. v. Broudo*, *supra* at 544 U.S. 336 (2005)

75.     The federal securities fraud complaint before the Defendant fails to meet the pleading standards for securities fraud actions enumerated by PLSRA, and even if all of the facts alleged in the complaint were assumed to be true, those facts would not be sufficient to give rise to liability under any federal securities statute.

**Defendants' Order**

76.    The Defendant was briefed on, among other issues, the enactment of NSMIA, the

SECs final preemptive ruling IA-1633 regarding  Sections 203A(b) of the IAA, the

legislative history of NSMIA contained in IA-1633, the definition of "client" under 17

C.F.R. 275.203b, and federal adviser exemptions from the Massachusetts Securities

Statutes under M.G.L. 110A, §401(m-o) by the Plaintiffs. (Exhibit B)

77.    The Defendant, in the course of his official duties, rendered an Order invoking

state law regulatory requirements upon the Plaintiff, the effect of which acts to deny the

Plaintiff substantial Constitutional rights afforded under NSMIA and the IAA.

The Defendants Order states:

> "Ellrich and MFA's contention that the IAA preempts state securities law is
> erroneous, and as a result, the arguments resting on this premise must fail.  The
> statute itself captures Congress's intent not to preempt state regulation of
> investment advisers: "Nothing in this subchapter shall affect the jurisdiction of the
> securities commissioner (or any agency or officer performing like functions) of
> any State over any security or any person insofar as it does not conflict with the
> provisions of this subchapter or the rules or regulations thereunder." (15 U.S.C. §
> 80b-18a.".........(Exhibit A, p. 7)

Under NSMIA, Congress authorized the SEC to promulgated new Section 203A(b) of the

IAA.  In enacting Section 203A(b) of the IAA, the SEC issued final rule IA-1633 and

directed that the regulatory jurisdiction of state securities regulators with regard to federal

investment advisers is preempted and further directed that 203A(b) preempts all state law

that regulates federal advisers and their supervised persons. In order to comply with

NSMIAs preemptive provisions, the Commonwealth of Massachusetts amended M.G.L.

110A with § 401(m)-(o) and relinquished the state security commissioners authority to

regulate federal advisers and their supervised persons under M.G.L. 110A, and excused

federal advisers and their supervised persons from responsibility to the requirements of

M.G.L. 110A including §410a.   Section H. of IA-1633 begins: (Exhibit J, p. 65)

H.   Scope of State Authority Over Commission-Registered Investment Advisers

1. Preemption of State Regulatory Authority

"The Coordination Act gives the Commission primary responsibility to regulate advisers that remain registered with the Commission by preempting state regulation of those advisers"

There is nothing unclear about the SECs statement above yet the Defendant's Order ignores current U.S. Code, federal regulations, or the SECs final order IA-1633.

78.   The Defendants' Order misinterprets the first sentence of §80b-18a as an absolute command without regard to the remainder of the paragraph: *"insofar as it does not conflict with the provisions of this subchapter or the rules and regulations thereunder."* (my italics) For all the reasons stated previously in this brief, §80b-18a conflicts with §80b-3a(b)(1), SEC Final rule IA-1633, and Section 203A(b) of the IAA and is therefore superseded and without effect regarding federal advisers.

79.   Next, the Defendants' Order quotes Congressional record from 1960 regarding the enactment of 15 U.S.C. § 80b-18a:

"Moreover, the legislative history identifies the law's purpose to "express clearly the concurrent jurisdiction in the area of investment advisers, in view of the important role which State authorities must play in the supervision of securities." S. Rep No. 1760, 86th Cong., 2d Sess., *reprinted* in 1960 U.S. Code Cong. & Admin. News 3502,3511."(Exhibit A, p. 7)

The Defendant omits the first part of the Congressional record. Pub. L. 86-780, STAT 4589 states "*State law.* – Section 16 of the bill would add a new section 222 to the act, which would provide that the jurisdiction of a State securities commissioner or similar officer would not be affected by provisions of the Investment Advisers Act *so long as there was no conflict with its provision.*" (my emphasis).  With the enactment of Title III of NSMIA, Congress preempted the broad jurisdictional authority of states over federal

advisers under 80b-3a(b)(1) and 203A(b) of the IAA thereby creating a *conflict* with

§80b-18a. S. Rep, 104-293, 2nd Session (1996) states in part:

> "Title I of the bill creates a clear division of labor between the states and the federal government for supervision of investment advisers." Id., Note 1

> "The states should play an important and logical role in regulating small investment advisers whose activities are likely to be concentrated in their home state. Large advisers, with national businesses, should be registered with the Commission and be subject to national rules." Id., Note 2

> "Investment advisers registered with the SEC will no longer have to register with the states but will continue to pay fees to the states" Id., Note 2

> "The Committee preempts state registration of Commission-registered advisers as well as advisers that are specifically excepted from the definition of investment adviser. Persons who are supervised by advisers registered with the Commission are also preempted from state registration." Id., Note 3

Both the intent of Congress and the SECs interpretations thereof, state that 15 U.S.C.

§80b-3a and 203A(b) of the IAA preempts states regulation of federal advisers and all

state law that regulates federal advisers advisory activities. The Defendants' legal

argument, and Congressional citation in support thereof, is premised upon the broad

jurisdictional command line of 80b-18a without regard to it's exception clause "insofar as

it does not conflict with the provisions of this subchapter or the rules or regulations

thereunder." §80b-3a conflicts with, and therefore supersedes, 80b-18a regarding federal

advisers and their supervised persons thus rendering the Defendants' Order legally

frivolous. "A claim may be properly characterized as legally frivolous if it lacks an

arguable basis in law or is based on an indisputably meritless legal theory. *Neitzke,* 490

U.S. at 325, 327, 109 S.Ct. 1827

80.    Defendant cites *Fed. Trade Comm'n v. Ken Roberts Co.*, 276 F.3d 583, 592 (D.C.

Cir. 2001) for the proposition that since the IAA does not limit other federal agency anti-

fraud jurisdiction over federal advisers, the states maintain full jurisdictional authority to regulate federal advisers. The Defendant conflates jurisdiction with regulation when he states:

> "Because the IAA does not preempt state regulation of investment advisors, as demonstrated by the statutory language and case law in support of concurrent jurisdiction and the defendants' failure to cite any relevant law to the contrary, state securities law is applicable to Hays's claims." (Exhibit A, p. 8)

At best, the Defendants citation of *FTC* v. *Ken Roberts* stands for the proposition that federal acts do not preempt other federal acts and both states and federal agencies maintain anti-fraud authority over federal advisers. The absence of legal citations on the issue of federal investment adviser preemption cannot form the basis for the Defendants legal conclusions when the law, Congressional record, agency rules and regulations are clear on their face. Contrary to the Defendants assertion that MFA and Ellrich failed to cite any relevant cases or law, Section 203A(b) of the IAA is relevant to the preemption discussion. It contains the enabling clause of 15 U.S.C. 80b-3a(b)(1). The *Goldstein* Court decision makes abundantly clear that limited partners of hedge funds are <u>not</u> clients of the adviser under Section 203(b)(3)-1(a)(2)(i) of the IAA and <u>no</u> fiduciary duty is owed. *Goldstein,* 451 F.3d 873, 876  The SECs final rule IA-1633 promulgating Section 203A(b) of the IAA represents the agencies directive that 203A(b) preempt state law and state regulatory authority over federal advisers. As such the Defendant was well briefed on the SECs preemptive order IA-1633 yet chose to ignore SEC directives and the *Goldstein* decision in favor of sustaining a frivolous third party law suit under state law, even though MFA and Ellrich are both exempt from the provisions of M.G.L. 110A of which the Defendant seeks to make Ellrich and MFA responsible to.

81.    The Defendant was briefed that M.G.L. 110A specifically excludes federal

covered advisers and their representatives from responsibility to the statute. The Defendants' Order makes no mention of state exemptions for federal advisers or for that matter, the distinction between federal and state investment advisers. (Exhibit A) In fact, the Defendants Order completely ignores federal adviser exemptions under M.G.L. 110A, §401(m)-(o).(Exhibit M)

82.    In rendering his Order, the Defendant makes the determination to allow the facts presented at trial, rather than the law, to determine whether or not a contractual client relationship and fiduciary duty owed to Hays. The Defendant's Order states:

> "Whether Hays was still a client to whom MFA owed a fiduciary duty after she had invested in the CMF is a significant issue in dispute; the investment advisory agreement was still in place according to the terms of the contract, .." (Exhibit A, p. 9)

17 C.F.R 275.203(b)(3)-1(a)(2)(i) states that the hedge fund is MFAs client and Hays assumes a new legal status as "owner". Section 215 of the IAA voids the Hays/MFA contract by statute because the continuance of a client relationship violates 17 C.F.R 275.203(b)(3)-1(a)(2)(i). The breach of fiduciary duty claim fails because Section 206 of the IAA states that a fiduciary duty is owed to MFA's client, the hedge fund, not third party owners like Hays. *See Goldstein*, 451 F.3d 873, 876 Furthermore, neither Ellrich nor MFA received any commission or charged Hays any advisory fees for her investment in the hedge fund, because she was not a client. 17 C.F.R. 275.203(b)(3)-1(b) (4), states:

> "You are not required to count as a client any person for whom you provide investment advisory services without compensation;"

Even under common law, a party seeking relief under a contract must prove performance. In the case before the Defendant, Hays admits she paid no advisory fees to Ellrich or MFA for her investment in CMF. Hays also admits in her pleadings that she could not

sustain a claim under the IAA because she paid no fees and is not entitled to relief. *See Transamerica*, 444 U.S. 11

83.    The Defendant states that MFA and Ellrich are subject to M.G.L. 110A, § 410a. For reasons stated above, <u>all</u> state law that seeks to regulate federal advisers is preempted. Sec. 410a is part of the regulatory statute that NSMIA absolutely preempts. "When an entire field is preempted, a state may not add a damages remedy unavailable under federal law." *See Pub. Util. Dist. No. 1 of Grays Harbor County Wash.*, 379 F. 3d 641. 648-49 Furthermore, M.G.L. 110A, 401(m-o) exempts federal advisers and their investment adviser representatives from responsibility to the statute. Under the hedge funds prospectus, only the general partner is authorized to sell limited partnership interests. (Exhibit E, p. 2, Section 10.1(j))  Neither Ellrich nor MFA were ever part of the funds general partnership. The hedge fund's Offering Memorandum plainly states that EHCP is the General Partner of the hedge fund, CMF, and names those persons who are partners in ECHP. (Exhibit D, p. 3)

> **Partnership and General Partner**
> Convergent Market Fund II, L.P., a Delaware limited partnership (the "Partnership"), was formed in December, 2000. The general partner of the Fund is Emerging Health Capital Partners, LLC, a newly formed Delaware limited liability company (the "General Partner"), whose principals include Richard Furber, Terry Murphy, Mark Lubash, Martin Wallace, Stephan Munier. (the "Principals)"

The Supreme Court limited liability under federal law to those who solicit a purchase, and not those who "merely assist another's solicitation efforts." *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)).   Under federal law, the general partner is the issuer and control person. The general partner is also the sole party to which Hays was contracted regarding her investment in the hedge fund.  Furthermore, the funds prospectus states that the general partner owes a fiduciary responsibility to the limited

partners.

84.     The Defendants Order imposing state regulatory requirements upon MFA and

Ellrich, a federal adviser, is precisely the type of activity Congress specifically prohibited

under NSMIA.

> ...."the Committee intends to prevent the States from indirectly doing what they
> have been prohibited from doing directly." ...the legislation preempts authority
> that would allow the States to employ the regulatory authority they retain to
> reconstruct in a different form the regulatory regime ....that Section 18 has
> preempted." *House Report, supra note 96, at 34*.

> "[t]he Committee clearly does not intend for the "policing" authority to provide
> states with a means to undo the state registration preemptions" *Senate Report,
> supra note 4, at 15.* (Exhibit J, p. 71, Note 155)

The SEC is the federal agency empowered by Congress under NSMIA to promulgate

regulations that preempt state law.  The SEC's final order states:

> "section 203A(b) preempts not only a state's specific registration, licensing, or
> qualification requirements, but *all regulatory requirements imposed by state law
> on Commission registered advisers*." (my italics) (Exhibit J, p. 66)

> "In addition to preempting state law with respect to investment advisers registered
> with the Commission, the Coordination Act preempts state law with respect to
> their "supervised persons. A supervised person is defined as any "partner, officer,
> director. . . . , or employee of an investment adviser, or other person who provides
> investment advice on behalf of the investment adviser and is subject to the
> supervision and control of the investment adviser." (Exhibit J, p. 40-41)

There is nothing unclear about the SECs order preempting all state law that regulates

commission registered investment advisers.  "A preemptive regulation's force does not

depend on express congressional authorization to displace state law..." *See Fidelity Fed.

S.& L.*, 458 U.S. 141 *citing United States v. Shimer*, 367 U.S. at 367 U.S. 381-383,

"Thus, the Court of Appeals's narrow focus on Congress' intent to supersede state law

was misdirected.  Rather, the questions upon which resolution of this case rests are

whether the Board meant to preempt California's due-on-sale law, and , if so, whether

that action is within the scope of the Board's delegated authority" Id., 154  There should
be no question before this Court that the SEC has implicit Congressional authority to
promulgate rules and regulations that preempt state law in the area of federal advisers
and has clearly done so in promulgating Section 203A(b) of the IAA. (Exhibit J, p. 66)  It
should also be clear to this Court that Congressional record clearly indicates Congress'
intent under NSMIA to preempt state investment adviser law. See S. Rep, 104-293, 2nd
Session (1996) "And federal regulations have no less preemptive effect than federal
statutes. Where Congress has empowered an administrator to promulgate regulations,
regulations intended to preempt state law have that effect unless the administrator
exceeded his statutory authority or acted arbitrarily." *Fidelity Fed. Sav. & Loan Assn. v.
De la Cuesta* , 458 U.S. 141, 153-154, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982) *citing*
*United States v. Shimer*, 367 U. S. 374, 367 U. S. 381-382 (1961)   "When the
administrator promulgates regulations intended to preempt state law, the court's inquiry
is similarly limited." Id. page 458 U.S. 154 "We have concluded that regulations
'intended to pre-empt state law' that are promulgated by an agency acting non-arbitrarily
and within its congressionally delegated authority also have pre-emptive force." *Fidelity
Fed. Sav. & Loan Assn. v. De la Cuesta* , 458 U.S. 141, 153-154, 73 L. Ed. 2d 664, 102
S. Ct. 3014 (1982).

85.    Finally, the Defendants' Order states that Hays was on statutory notice as of
September 11, 2003 that she should have known that something was amiss regarding her
hedge fund investment (Exhibit A, p. 8)  Since the cause of action before the Defendant is
field preempted by 203A(b) of the IAA, the Sarbanes-Oxley Act of 2002 (15 U.S.C. 98 *et
seq.)* prescribes that Hays had two (2) years from actual notice to file a cause of action, or

43

until September 11, 2005. Since the preempted state claims before the Defendant were filed on September 11, 2006, over one (1) year after the federal statute of limitations expired, the claims are barred. There is no tolling of federal securities statutes of limitations. *See Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988))

Therefore, for all the reasons stated above, the Defendants Order stands in contravention of federal law, violates the Supremacy Clause of the U.S. Constitution and denies Plaintiff Due Process rights under the Federal Constitution.

## COUNT I
### *Ex Parte Young*

86.    Plaintiff hereby re-alleges the allegations contained in Paragraphs 1 – 85.

87.    The Trial Court of the Commonwealth of Massachusetts has issued an Order requiring that Ellrich, as an advisory representative of MFA, a federal covered advisor, be subject to Massachusetts State Securities Laws and Massachusetts Common law regarding his advisory activities.

88.    Although the Order claims to be enforcing the Massachusetts Securities Statute and Common Law, in fact, it is motivated by and has the effect of regulating MFA's and thus Ellrich's advisory representative activities that are specifically governed by Federal Law.

89.    NSMIA removes from the States jurisdiction to regulate federally registered advisers and their investment advisor representative or to impose any state laws that have the effect of regulating a Federal Covered Advisors' and their advisory representatives' advisory activities.

90.     The Defendants' Order violates the Supremacy Clause of the United States

Constitution because the activities that the Order seeks to regulate are those within the

field that Congress has made clear is to be left exclusively to federal law.

91.     MFA and Ellrich have no adequate remedy at law.

92.     Interlocutory appeals are not a right under Massachusetts Law.

93.     There is no bona fide "state interest" in the case before the Defendant.

94.     Ellrich requests declaratory relief under the doctrine of *Ex Parte Young* to declare

that the Order by Defendant Neel, a judicial officer of the Commonwealth of

Massachusetts, constitutes a violation of the Supremacy Clause of the U.S. Constitution.

## COUNT II
## 42 U.S.C. § 1983

95.     Ellrich hereby re-alleges the allegations contained in Paragraphs 1 – 94.

96.     By subjecting Ellrich to Massachusetts state securities regulations and common

law touching upon activities that, pursuant to NSMIA, are to be regulated exclusively by

federal law, the Defendant, acting under color of state law, violated the right that NSMIA

and the IAA provided to Ellrich, namely the right to be free from said state securities

regulations and laws.

97.     The Defendant has violated Ellrich's right to Due Process, under the Federal

Constitution, by signing an Order that purports to maintain a state civil action that stands

to deprive Ellrich of property while giving Ellrich a constitutionally inadequate post-

deprivation remedy.

98.    This violation of Ellrich's rights secured to him under NSMIA, the IAA and the

Due Process Clause of the Federal Constitution should be remedied by the granting of

relief under 42 U.S.C. § 1983.

99.    Ellrich has no adequate remedy at law.

100.    Declaratory Relief against the judicial department of the Commonwealth of

Massachusetts is unavailable under M.G.L Chapter 231A: Section 2.

101.    Massachusetts State Law precludes the right of Ellrich to interlocutory appeal.

102.    Ellrich requests declaratory relief pursuant to 42 U.S.C. § 1983.

<div align="center">

**COUNT III**
**42 U.S.C. § 1983**
**Sarbanes-Oxley Act of 2002**

</div>

103.    Ellrich hereby re-alleges the allegations contained in Paragraphs 1 – 102.

104.    By subjecting Ellrich to Massachusetts state securities statute of limitations,

touching upon activities that, pursuant to NSMIA, are to be regulated exclusively by

federal statute of limitations, the Defendant, acting under color of state law, violated the

right that NSMIA and the IAA provided to Ellrich, namely the right to be free from said

state securities regulations and laws.

105.    The Defendant has violated Ellrichs' right to Due Process by signing an order that

purports to maintain a state civil action, even though the applicable federal statute of

limitations bars the civil action before the Defendant, that has, and continues to, deprive

Ellrich of property while giving Ellrich a constitutionally inadequate post-deprivation

remedy.

106.    Ellrich requests declaratory relief pursuant to 42 U.S.C. § 1983.

**WHEREFORE, PLAINTIFF respectfully request that this Court:**

1. Declare under Count I that enforcement of a State Securities Statute or State Common Law regulatory requirements upon MFA, a Federal Registered Investment Adviser and therefore, Ellrich, its Investment Adviser Representative, by the State Trial Court, has its effect to regulate Ellrich's federal advisory activities and violates the Supremacy Clause of the US Constitution.

2. Declare under Count II that the Defendant - Massachusetts Trial Court -has violated Plaintiff's federal right to be free from state regulation in an area that is to be regulated exclusively by Federal law;

3. Declare under Count III that the Defendant-Massachusetts Trial Court has violated the Plaintiff's Due Process rights under the U.S. Constitution by allowing this cause of action to continue under the color of State Statute of Limitations when the law controlling the case is Federal Law and the Federal Statutes of Limitations bars the state cause of action before the Defendant;

4. Declare under all Counts that Defendant has violated the Supremacy Clause of the U.S. Constitution, and denied Plaintiff substantial Due Process Rights under the U.S. Constitutional by allowing a pleading under Massachusetts State Law where Federal Law is controlling law of the case and heightened pleading standards of the Private Securities Litigation Reform Act of 1995 must be imposed;

5. Declare under all Counts that Defendant has violated the Supremacy Clause of the U.S. Constitution by rendering an Order that Ellrich be subject to State Securities Law and Common Laws, when all state claims against Ellrich before the Defendant are field preempted by Federal Law;

6. Award Plaintiff its costs; and

7. Award such other and further relief as the Court deems just and proper.

<div style="text-align:right">

Respectfully submitted,
DAVID J. ELLRICH

Pro Se Litigant,

David J. Ellrich
107 Beach Street
Manchester, MA  01944
978-526-8007 ext. 11
dje@mfadvisors.com

</div>

DATED: October 12, 2009